John A. Monteleone, J.
Petitioner seeks an order to compel respondent to provide him a place in the medical school class of 1974-1975.
He avers that respondent has denied him admission, albeit students of a “ minority group ”, presenting inferior credentials have been accepted.
He urges further that refusal to accept him for admission is arbitrary and capricious and violates his right of equal protection under the law as mandated by the Constitution.
*1092 Upon the return of the motion, the court conducted a hearing which by consent of the parties was constituted a trial of the issues.
The facts so far as the same are pertinent to the instant case are as follows:
Petitioner applied for admission to respondent’s medical school for the class of 1974-1975. He was one of 6,300 applicants for 216 allocated seats. All the applications, generally, were coded upon a prescribed formula in which applicants receiving a number above 110 were automatically interviewed and those receiving a score below 110 downward to 102 being screened preliminarily by respondent’s admissions committee consisting of 12 faculty doctors. The committee was empowered to decide which, if any, of said lesser group would be interviewed. Petitioner’s code assignment was number 104. He was one of 1,400 students interviewed. Included in the 6,300 applicants were 435 of black or Puerto Rican descent. Their applications were not subjected to the admissions procedures employed with respect to others. Instead, their applications were immediately hand screened by a member of the admissions committee for possible interview. One hundred and forty-five were interviewed. Screening in their respective cases, unlike that of applicants falling within the nonminority category, encompassed academic achievement in the light of attendant educational, financial and cultural disadvantage.
Of all accepted applicants, 475 in number, minority and non-minority, each received a committee’s maximum score for admission. In addition, two alternate lists were established. The first list contained 131 students, who had also attained maximum ratings, but were not preliminarily accepted. The second alternate list consisted of 128 applicants who had received slightly lower rating. These two were in fact “ waiting lists ”.
Ultimately, respondent accepted for admission 66 minority students with an additional 13 placed on the first alternate list and 6 on the second. Due to attrition caused by withdrawals and déclinations, the presently preregistered group of minority students for the 1974 — 1975 class consists of 21 in number.
The court is confronted with determining whether the respondent’s admission practices relating to minority group applicants are a proper subject for judicial intervention and whether such practices deny equal protection under the law to the petitioner, and whether the refusal to accept petitioner for admission was arbitrary and capricious.
*1093 The crux of petitioner’s assault upon the respondent’s admission practices appears to be that the acceptance of minority students with lesser credentials than those presented by petitioner is based upon race alone. If such were the case, the court would be constrained to conclude that petitioner was not afforded equal protection under the law. The court is in accord with the conclusion of Mr. Justice Douglas in the case of De Funis v. Odegaard (416 U. S. 312, 387) that petitioner had the right to have ‘ ‘ his application considered * * * in a racially neutral manner.”
There is nothing in the record to indicate that acceptance of minority students by respondent was based solely on race. On the contrary, the testimony adduced in behalf of respondent is that a minority student whose low grades could not be attributed to financial and educational disadvantage would not be given the consideration shown to the disadvantaged. Furthermore, with respect to minority applicants, educational, cultural, economic background and probability of success in the program were considered. The court is of the opinion that there is no bar to considering an individual’s prior achievements in the light of his disadvantages, culturally, economically and educationally, as a factor in attempting to assess his true potential in a successful career. The court is of the further opinion, as expressed oft times by others, that standards of admission need not be based upon predetermined robot-like mathematical formulae. On the contrary, educators should be free to assess the credentials and the persons presenting them upon entrance outside of test scores and formula ratings.
It would appear on the entire record, that only minority students who are qualified and whose entire record demonstrated to the committee that they possessed potential to successfully complete the program were accepted. The court is extremely sympathetic to the petitioner’s plight. However, it sees no valid reason to interfere with respondent’s admission practices. Remedial judicial authority does not put Judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults. (Swann v. Board of Educ., 402 U. S. 1, 16.)
The court notes further that testimony in relation to petitioner’s standing discloses that even if all minority students were rejected, his probability of admission was nevertheless very unlikely. The evidence adduced on the trial disclosed that petitioner holds the 84tTa position on the second alternate list. There *1094 áre a total of 71 waiting applicants on the first alternate list. The total number of applicants holding priority over petitioner is 154. Assuming therefore, if the court was in accord with the petitioner’s contentions, and all 21 minority .acceptances were declared invalid, the court could not grant relief to petitioner. In order to mandate petitioner’s acceptance, not only must the court invalidate the preregistered minority group, but must also bypass all of the nonminority applicants on the first and second alternate lists having priority over petitioner. There is nothing in the facts adduced or the applicable law which would warrant such action. >
Petitioner has failed to demonstrate that the policy and procedures relating to admission which resulted in denying him a place in the 1974 — 1975 class were so unreasonable and in disregard of the facts and circumstances in .tie case so as to constitute arbitrary and capricious conduct on the part of the respondent.
Petitioner’s prayer for relief is therefore in all respects denied.